## THE SILVIA.

### FRANKLIN SUGAR-REFINING CO. v. THE SILVIA.

(District Court, S. D. New York. November 24, 1894.)

SHIPPING—NEGLIGENCE OF VESSEL—ACT FEB. 13, 1893.

Under the act of congress of February 13, 1893, providing that a shipowner who exercises due diligence to make his vessel seaworthy, and properly equipped and supplied, shall not be liable for damage resulting from errors in navigation or in the management of said vessel, an owner who equips his vessel with proper ports, glasses, and iron covers for the ports, of the usual kind, is not liable for damage resulting from the omission of the officers of the vessel, at the time of sailing on a voyage, to close the iron covers over the glass port lights, in consequence of which water breaks through the glass and injures the cargo.

This was a libel by the Franklin Sugar-Refining Company against the steamship Silvia to recover damages for injury to a quantity of sugar consigned to libelant.

Wing, Shoudy & Putnam (Charles C. Burlingham, of counsel), for libelant.

Convers & Kirlin, for claimant.

BROWN, District Judge. On the delivery of the libelant's consignment of sugar by the steamship Silvia, in Philadelphia, in February, 1894, a quantity of the sugar was found to have been damaged by sea water which had got into the ship through a glass port light, broken during the voyage. The port was supplied with a proper iron cover or dummy, which, however, was not closed or made fast at the time of sailing, although the hatches leading downward into that compartment were battened down. This, in my judgment, was negligence on the part of the ship, for which the vessel and the owners would have been liable (Steele v. Steamship Co., 3 App. Cas. 72; The Carron Park, 15 Prob. Div. 205), but for the provisions of the act of congress known as the "Harter Act," passed February 13, 1893 (27 Stat. p. 445, c. 105; 2 Supp. Rev. St. p. 81, c. 105,) which, by section 3, provides:

"That if the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped and supplied, neither the vessel, her owner or owners, agent or charterers shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel."

For the libelant it has been contended that the ship was not in a seaworthy condition on sailing, by reason of the fact that the covers for the glass ports were not properly closed, though the hatches

were battened down so as to prevent ordinary access or observation of the compartment in any change of weather. There is no evidence, however, nor can I assume, that the iron covers or dummies were not of the ordinary kind, and sufficient to prevent the breaking of the glass in the ports and any ingress of water beyond what the scuppers would clear had the covers been properly closed. In supplying the usual iron covers, the owners had "used due diligence to make the ship seaworthy" as regards these ports, and had fulfilled their obligations in this regard under the act of February 13, 1893, so as to bring themselves within its protection. Although the ship sailed from Mantanzas in an unseaworthy condition, from the fact that the hatches were battened down without the closing of the iron coverings of the ports below, that was not the owner's fault. The duty to close the iron covers to prevent the breakage of the glass and the ingress of sea water was a duty appertaining exclusively to the "management of the vessel," which devolved upon the officers of the ship," and the omission to close them was a "fault or error in the management of the vessel" within the language of the act. The omission was a fault of precisely the same nature as the omission to put on hatch covers would have been in a rough sea. By the supply of proper ports, proper glasses and proper iron covers for the ports, as in the supply of proper hatch covers, the owner's duty of "due diligence" was fulfilled; and if the officers of the ship, either at the moment of sailing or afterwards, omit to make use of the things supplied to put or keep the ship in a proper seaworthy condition for meeting the perils of the seas from time to time, such an omission seems to me purely a fault "in the navigation or management of the vessel," for which the owner is not responsible under the recent act.

The case is quite like that of Hedley v. Steamship Co. [1892] 1 Q. B. 58, [1894] App. Cas. 222, where a seaman in a heavy lurch of the ship was thrown overboard and drowned, because the stanchions and rails properly supplied for the ship by the owners, had not been set in place on the starboard side as they ought to have been set on the departure of the ship. The administratrix sought to recover damages of the owners. In the decision of the case, both in the court of appeal and in the house of lords, two points were adjudged,—First, that the master's neglect to set the stanchions and rails was the negligence of a fellow servant in the navigation of the ship, for which the owners were not liable at common law; secondly, that under the provisions of the merchant's shipping act, which are equally stringent with those of our own act, as respects the obligations of the owner to make and keep the ship seaworthy, the supply of all the usual and proper equipment was a full compliance with the act by the owner in respect to the stanchions and rail, and that the "fault was in not making use of the equipment with which the ship had been furnished." [1894] App. Cas. 228. See, also, The Southgate [1893] Prob. Div. 329; The Warkworth, 9 Prob. Div. 20. This seems to me precisely applicable to the act of congress of February 13, 1893, and upon that ground the libel must be dismissed, but, as the question is a new one, without costs.